Good morning. May it please the Court, Craig Gardner for Mr. Holloway Appellant. I just wanted to start this morning by correctly identifying the ultimate issue in this case, and that's whether or not Officer Irwin's inference that if he was able to see the brake lights, that he would have been able to see the taillights, whether or not that's an objectively reasonable inference. I wanted to review that some of the other background facts, because I think the other background facts, using the totality of the circumstances, do not support. One of the very strange things about the record in this case is that we do not have any information about the particular car. I mean, it would be very simple if either side had simply put in either a photo of the car or some information about the model, which would easily tell us where these lights were and whether somebody who saw the brake lights could see the directional lights. It's a ridiculous situation, frankly. Well, Your Honor, I think that I explained to the district court judge that we didn't know what Officer Irwin was going to testify to at the hearing, and that's why we haven't provided that kind of information. But I also think that that actually supports our argument, because what we're saying is that the officers that are out there making these traffic stops can't have knowledge of the particular operating capacities of the lighting equipment on each individual vehicle. I don't know. I mean, they see a lot of cars. They may know that Toyotas are a way and Hondas are another way. Who knows? But our submission is that that's what the general rule regarding the actual requirements that are laid out in the regulations are for. So if you give some kind of a parameter to officers that are out there making traffic stops in the absence of needing to know what the specific operating capabilities of a vehicle are. Would it be enough if I don't know if there's any testimony like this, but in my experience, nine times out of ten, if you can see the brake lights, you can see the signal lights. And I think that reviewing the rest of the facts in this record, I think that in a normal traffic stop situation where an officer is more or less directly behind a vehicle, that that's true. I think it's one of the reasons that the government's argument is deceptively appealing. But in this case, I don't think that one could characterize what happened as a standard traffic stop, that normally officers don't pull people over for turn signal violations when they're, you know, a football field length away, driving parallel to them basically on a street. Next. One of the things that I noticed in the fact record was that in the record at 21, ER 21, an officer said that he could see the taillights, that the van was running taillights and headlights. When he described how he reacquired the van after he had made the turn onto 10th Avenue, he said that he couldn't see the van until the brake lights were activated. So sort of the inference that the government wants to rely upon, which is that if he could see the brake lights, he could see the turn signals, is sort of, you know, diminished by the fact that Officer Irwin said that he wasn't able to see the van until the brake lights were activated, and presumably the taillights were activated that entire time as well. Well, wasn't that, wasn't a building in the way temporarily or something like that? There were, there were, during the time in question, because he said that after he turned left into the parking lot, that he had lost sight of the van for the last 50 or 60 feet before the van actually made the turn. Before then, he was looking across a parking lot that the judge found had, I think based upon the videotape, had parked cars in it and there were some bushes and some taillights. So it was partially obstructed. So is your basic, I mean, your basic argument as to why there was not a basis to stop him is that because of where he was situated, he couldn't see the brake lights? Because I think the judge found otherwise as to that, right? That's a fact. No, the judge actually found that Officer Irwin, this is in the order on the motion for reconsideration, the judge acknowledged that Officer Irwin was never in a position where the brake lights were required to be seen. That's a different question. But he said he saw them. He originally found that he saw them. He found that Officer Irwin did not see the left turn signal activate. I mean, that's one of the other factual things that's difficult about this case is because we're talking about something that wasn't observed. And the issue is whether or not it wasn't observed. But did he first find that he saw the brake lights at some point? Did the district judge ever find that the officer saw the brake lights as he said he did? Yes. The testimony that the district judge specifically credited was that he saw the brake lights. Okay. And then the inference that I think is the source of dispute in this case  In particular, we would argue the regulations that don't require that the turn signals be visible from where he was at, whether or not it's reasonable to infer that he would have been able to see the turn signals. And the only reason he wouldn't have would have been if this was some sort of an odd car in which the turn signals were somewhere other than where the brake lights were. I don't think that that's established in the record. I think that the regulations established the... that the turn signals are going to be visible from where the brake lights are. That's correct. And because it's the government's burden to establish that it was reasonable for, based upon the facts of... But why couldn't they simply rely on the usual experience that the turn signals are where the brake lights are? So if you can see the brake lights, you can see the turn signals. Well... Why do they need a regulation to tell them that? Why don't... Officers need a regulation to tell them that if you can see the brake lights, you can see the turn signals. Well, the officers don't need a regulation to tell them that in the normal everyday driving experience. However, when an officer is... I think the minimum angle that Officer Irwin was at, according to what we submitted to the court and was ostensibly accepted by the court based on the finding that they made, was that it was 62 degrees, which is well beyond the limitations... This is what I'm having trouble with. I understand that, and I was having trouble visualizing how this all was happening. But how does that impact on the usual knowledge that where the brake lights are, the turn signals are? In other words, if you can see the brake... On what scenario would the angle influence the usual conclusion that if you can see the brake lights, you can see the turn signals? Well, one of the things that we submitted in the regulations was that the intensity of the signals or of the lighting equipment in general diminishes greatly at the outward angles. So the question... But that would be true of the brake lights, too. But on what theory would you be able to see the brake lights but not the turn signals? I think that that's, again, assuming a fact, that if you were able to see the brakes, that you would be able to see the taillights. The objective standard that we're asking the court to apply would apply if the officer was within the visibility required by the regulation, because then the government, in a case where this was in dispute, would simply be able to offer the officer's testimony that he was within 45 degrees of the horizontal axis of either side of the car, that he didn't see the turn signal activate, and that, therefore, either the turn signal wasn't activated or that it was inoperable. But in the absence... So, you know, in that case, that's why we're arguing that that should be the objective standard that's applied. Officer Irwin didn't give any basis for his conclusion that, in all cases, that if you're able to see the brake lights, you'd be able to see the turn signals. But ultimately, he doesn't need to be right. He only needs to have probable cause. He needs to have... It needs to be reasonable. And, you know, I think a lot of that is based upon the other background facts of this case, that this was not a run-of-the-mill traffic. The real problem, to be honest, is this whole thing was manufactured, right? I mean, that he didn't really want to stop for turn signals at all. And that's the Wren case, and your little rant at the end of the brief about that is perhaps justified, but... I mean, I think that, Your Honor, is the ultimate thing, is that if we're going to have an objective standard, as is required by Wren, then we have to have a real objective standard that doesn't rely upon Officer Irwin's opinion or belief about whether or not he would be able to see the turn signals because he could see the brake lights. Did the regulations that you offered indicate that there's a higher requirement for brake light visibility than there is for a turn signal? No, Your Honor. I think that what we've offered are the maximum visibility requirements for the turn signals, which is 45 degrees. But I'm not sure that we have actually argued or the government's responded as to what the maximum requirements for brake lights would be at all. It may be contained in the regulations that were submitted to the court, but I don't think we argued that. I see that I'm out of time. Thank you very much. Good morning. My name is Robert Ellis. I'm an assistant from the Eastern District of Washington. This was not my case at the outset. I took it over after Mr. Holloway entered a plea pursuant to his conditional plea agreement and handed it from sentencing forward. So I'm in a rather strange case. I don't think I've ever argued a case where it wasn't mine from start to finish. I'm almost in a position that you all are in on a bare record. You've become an expert. They just called you in at the last moment. No, I'm about to leave the office and retire and do other things, and they're giving me all sorts of things to fill up my time. Your Honor, I only want to make a couple of comments, one as to the math portion, if you will, of the defendant's argument. If you look strictly at the math, then it would be impossible for the officer to see a turn signal of a car built to the minimum standards. His math shows that. But his math is a little wishy-washy. A road in most eastern Washington cities is 30 feet wide. A long time ago I used to land development. That's the minimum right-of-way for a typical municipal street is 30 feet. So you have 60 feet you're dealing with. You're not dealing with a line like this. You're dealing with a 30-foot gap. And his math has to fail because nobody can tell us within that 30-foot gap where those two cars were located on their individual streets. The thing that's really odd about this case is I can't visualize how you can see anything on a different street, I mean, even if there's nothing in between. They were driving parallel on different streets for a while there, right? Your Honor, if you read the transcript, that's a difficult point that was being made. They're traveling in parallel directions, but the police car is behind. But on different streets. That's right. And there's a parking lot in between. And you either accept the officer's testimony that he can see what he says he sees or you don't. He says that as he turned onto I think it's 10th, as Mr. Gardner indicated, he acquired the van because that's when he put on the brake lights. In response to some of the questions asked from Mr. Gardner, it is my suggestion the court take a close look at that co-van recording because it's obviously the government's position that we're not talking about some esoteric vehicle built to minimum standards. We're talking about a specific van. And that van, the rear of the van, is shown in that co-van recording as the officer approaches it and what you're going to see, let me digress a minute, there's various configurations of taillights on cars. There's what I call a panel light where there's lights going across the trunk lid or just above the rear bumper. This particular van, if you look at that co-van recording, has got two light clusters on the corner, each rear corner of the van. And you can actually see, if you recall, the van turned left into the law firm of Ada Nelson Parking Lot and then turned left into an alley. The officer's behind back there. You can see for yourselves what it looks like when that brake light comes on and that turn signal comes on. They are co-located on that particular vehicle. So the minimum standards really aren't in play here. The other point I'd like to make. If you believe he saw the brake lights. Pardon me? If you believe he saw the brake lights. If you believe he saw both brakes. And Judge Shea found the officer credible. And in two orders said he was credible, said he believed that he saw two brake lights. But let me digress for a minute. This is a totality of the circumstances situation. It's a dark night. It's an urban street, not at all like driving in downtown Seattle at night with all the ambient light from the buildings and all the traffic. You can, again, view the co-van recording and see the traffic is very light. And I think it's all our common experience. The darker it is, the more you see reflected light. There's buildings along the street. There's bushes along the street. Assume for a moment that the defense is right, that the officer could not have direct view of that turn signal. If the turn signal is on, we all know it's a bright light and it is reflected from the surrounding item. I think your opponent said that none of this was an issue in the district court, that this is all sort of a manufactured argument for appeal. Well, Your Honor, this whole issue of the bill to the minimum standards came up after the hearing. It couldn't be argued then. In fact, the court issued his order on the motion to reconsider without providing the government the opportunity to respond. And I'm providing factual argument here, not legal argument. I think it's perfectly appropriate to present this at this time. That's all I have unless the court has questions. Thank you. Thank you very much. You have 30 seconds. Is there anything more you want to say? It's fine to say no. I think no. Thank you very much. The case of United States v. Holloway is submitted.
judges: Canby, Thompson, Berzon